IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SANDRA J. ROBINSON,                    )
                                       )
         Plaintiff,                    )
                                       )
v.                                     )  CIVIL ACTION NO. 12-00694-WS-N
                                       )
CAROLYN W. COLVIN[1],  Acting          )
Commissioner of Social Security,       )
                                       )
         Defendant.                    )

REPORT AND RECOMMENDATION

Plaintiff Sandra J. Robinson ("Robinson") filed this action *pro se* seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") that

she was not entitled to disability insurance benefits  ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C.

§§ 401-433 and 1381-1383c, respectively.  This action has been referred to the

undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).   A hearing was held on October 23, 2013 before the undersigned

Magistrate Judge.  Present at the hearing were Sandra J. Robinson, the plaintiff,

appearing *pro* se, and AUSA Patricia Beyer, counsel for defendant.  Upon consideration

of the arguments presented at the hearing, the administrative record (doc. 18), and the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit in view of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties' respective briefs (docs. 21 and 25), the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

I.     Procedural History.

Robinson filed an application for DIB and SSI benefits on June 3, 2009, claiming an onset of disability as of January 31, 2008, because of problems with her heart and eyes and high blood pressure (Tr. 115-22, 147).  She was forty-nine years old at the time of her alleged disability onset date (Tr. 20).  The application was denied on September 4, 2009 (Tr. 15) and plaintiff requested a hearing (Tr. 69) before an Administrative Law Judge ("ALJ").  Following a hearing on November 17, 2010, at which Robinson was represented by counsel (Tr. 30-52), the ALJ issued an unfavorable decision on November 23, 2010 (Tr. 12-29).  Plaintiff then requested a review by the Appeals Council (Tr. 11) which was subsequently denied  on September 5, 2012 (Tr. 1-6), thereby making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a).[2] Plaintiff has exhausted all his administrative remedies and now appeals from that final decision.

II.     Issues.

As grounds for the instant appeal, Robinson asserted in her brief only that the Commissioner has "denied me my benefits three times: 2001, 2010, 2012."  (Doc. 21 at 3)[3].  At oral arguments, Robinson asserted in sum, that the ALJ erred because she is in

---

[2] All citations to the Code of Federal Regulations (C.F.R.) are to the 2013 edition.

[3] The ALJ noted during the hearing in this case that Robinson had filed an application for benefits in 1994, for which she was given a period of disability from June of 1993 through December 31, 1998, (Continued)

pain and takes "strong medications" that make her "drowsy." The issues are, therefore, whether the final decision of the Commissioner in 2012 is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole.

    III.    <u>Standard of Review</u>.

        A.    <u>Scope of Judicial Review</u>.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Forrester v. Commissioner of Social Sec.</u>, 455 Fed.Appx. 899, 901 (11th Cir. 2012); <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996); <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Forrester</u>, 455 FedAppx. at 901;

---

and again in 2001, which was denied at the ALJ level (Tr. 33). The ALJ has neither declared that the present claim is barred by res judicata nor reopened those prior claims. *See* 20 C.F.R. §§ 404.957(c)(1), 404.989. Consequently, the only decision by the Commissioner properly before this Court is the 2012 decision. *See* <u>McGowan v. Harris</u>, 666 F.2d 60, 67 (4th Cir.1981), *adopted in* <u>Cherry v. Heckler</u>, 760 F.2d 1186, 1189 (11th Cir. 1985); <u>Hensley v. Califano</u>, 601 F.2d 216 (5th Cir. 1979)('[R]efusals [by the Commissioner] to reopen [earlier claims] and determinations that a claim is res judicata are not reviewable."); <u>Campbell v. Astrue</u>, 2012 WL 2848898, * 2 (N.D. Fla., June 11, 2012)("District courts ... have no jurisdiction to review a refusal to re-open a claim for disability benefits or a determination that such a claim is res judicata."); <u>Bester v. Astrue</u>, 2012 WL 2064538, * 2 (S.D. Miss., April 04, 2012)(same).

Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, Martin, 894 F.2d at 1529 ("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

The ALJ is responsible for determining a claimant's RFC, an ingrained principle of Social Security law. *See* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.") "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or

environmental limitations caused by the claimant's impairments and related symptoms." Peeler v. Astrue, 400 Fed.Appx. 492, 493 n. 2 (11th Cir. Oct.15, 2010), *citing* 20 C.F.R. § 416.945(a). *See also*, Hanna v. Astrue, 395 Fed.Appx. 634, 635 (11th Cir. Sept.9, 2010) ("A claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his ... impairments.'")(*quoting* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir.2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." Hanna, 395 Fed.Appx. at 635 (citation omitted); *see also* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] ... use[s] to make a[n][RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. § 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [ ] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. § 416.945(a)(4).

(b) Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

(c) Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

(d) Other abilities affected by impairment(s). Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).  *See also* <u>Kennedy v. Astrue</u>, 2012 WL 2873683, * 7-8 (S.D. Ala. July 13, 2012).

  B. <u>Statutory and Regulatory Framework</u>.

  The Social Security Act's general Disability Insurance Benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §

423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§

404.1520, 416.920 (2010).  The Eleventh Circuit has described the evaluation to include

the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* Bell v. Astrue, 2012

WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1

(M.D. Ala. Jan. 17, 2012).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart,

357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of

qualifying disability once they meet the burden of proof from Step 1 through Step 4. At

Step 5, the burden shifts to the Commissioner, who must then show there are a significant

number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

Residual Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

able to do despite his impairments and is based on all relevant medical and other evidence.  *Id.*  It also can contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"),or hear testimony from a vocational expert (VE). Id. at 1239–40.

IV.    Findings of Fact and Conclusions of Law.

A.    Statement of Facts.

1.    Plaintiff's Vocational Background.

Robinson is now 55 years old and was 50 years on September 30, 2008, the date she was last insured[5] and 52 at the time of her hearing before the ALJ  (Tr. 34, 140).  She completed high school in 1978 (Tr. 151) and her relevant past work was as a housekeeper (Tr. 148).

2.    Plaintiff's Written Statements and Testimony.

On August 24, 2009, Robinson completed a "function report," and stated that each day after she wakes up, she cleans her house, reads her books and Bible and walks 30 minutes (Tr. 154).  She also states that her "back and eyes (glaucoma) and my head (blood pressure)," affect her sleep but does not explain how these conditions affect her

---

[5] In order to qualify for DIB, a claimant must be found to have been disabled on or before her date last insured.  *See* 20 C.F.R. § 404.101; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

sleep (Tr. 155). Similarly, she states that she needs help caring for her hair but fails to explain what kind of help she needs in light of her condition (Tr. 155). She further stated that she prepares all her meals, does her laundry, and shops twice a month (Tr. 156-157). Robinson reported that her hobbies and interests include reading, walking and watching television and that she did these "good" every day (Tr. 158). She also goes to church weekly, talks on the phone and uses a computer daily (Tr. 158). She said she could not lift more than 50 pounds and could walk 30 minutes at a time (Tr. 159). She also rated her ability to pay attention, follow both written and verbal instructions, and get along with authority figures as "good" (Tr. 159-160).

Robinson testified at the hearing on November 17, 2010, that she worked at the end of 2008, but only for a few days because the job was seasonal (Tr. 36). She reported that from 1990 to 1992 she worked as a nursing assistant but injured her back and was unable to lift over 25 pounds (Tr. 36-37). She went on disability for a time (Tr. 36). She also did cleaning, like "vacuuming and stuff" but no lifting on a fairly regular basis from 2004 through 2008 (Tr. 37).

Robinson testified that she had been getting treatment for her back from Dr. Daugherty for 17 years, and that her treatment consisted of injections every three to six months and Naproxen,[6] 500 milligrams, twice a day, which she contended "makes me

---

[6] Naproxen, which goes by the brand name of Aleve, is a nonsteroidal anti-inflammatory drug that is used to treat pain or inflammation caused by conditions such as arthritis, ankylosing spondylitis, tendinitis, bursitis, gout, or menstrual cramps. http://www.drugs.com/naproxen.html

drowsy" (Tr. 38-39). She testified that she had glaucoma and is now blind in her left eye but her right eye has been treated with eye drops and is good, so she can read and watch television (Tr. 39-40). Robinson further testified that her depression was being treated only with medication, which helped (Tr. 41). She said she was not as depressed as she was in 2007 (Tr. 45). She also stated that she was "borderline for high blood pressure and [took] medication for that [and] the medication keep[s] it where it needs to be" (Tr. 41).

Robinson reported that she could walk for 15 minutes at a time, stand three to four hours at a time, sit two to three hours, and lift 10 pounds (Tr. 41-42). Robinson described having difficulty opening bottles with her right hand (Tr. 43). She said she did household chores including vacuuming, cleaning the bathroom using a chair or on her knees, cooking and laundry (Tr. 43-44). Her other activities included going to church, visiting with family, doing crossword puzzles, reading, watching television (Tr. 44).[7] Robinson also reported that her depression medicine and pain medicine makes her drowsy (Tr. 46). She takes about an hour, sometimes 30 minute, nap every day, and otherwise rests for three to four hours a day (Tr. 47).

        3.      <u>Medical Evidence before the ALJ</u>.

Robinson's family doctor, Phillip Rawlings, M.D., has provided her with general

---

[7] Robinson stated that, as she did her daily activities, she would rest at times, such as when baking, she would put it in the oven and then go sit in her chair and do her crossword puzzle while it bakes (Tr. 46).

preventive care and treatment for high blood pressure and cholesterol, depression, leg pain, and obesity (Tr. 177-79, 207-48). She has also been treated by Curtis M. Graf, Jr., M.D., of Premier Medical West, for glaucoma (Tr. 181-84, 196-98).

Manuel P. Daugherty, Jr., M.D., treated Robinson for degenerative disc disease between March 2007 and January 2010 (Tr. 185-93, 204-05). On October 17, 2007, three months prior to her alleged onset date, she reported she was able to tolerate her back discomfort but "still is bothered by persistent pain of a low grade nature" (Tr. 188). She said she was in training for a job (Tr. 188). Examination revealed good range of lumbar spine motion, no evidence of significant spasm, negative straight leg raising tests, equal reflexes, and no muscle weakness (Tr. 188). Dr. Daugherty reported her diagnoses as lumbar pain and lumbar degenerative disc disease (Tr. 188). He provided a Depo-Medrol injection,[8] ordered laboratory testing, and refilled her Naprosyn prescription[9] (Tr. 188).

Five months later, on March 21, 2008, Robinson returned to Dr. Daugherty complaining of "some exacerbation of her back pain [] and she had run out of medicine" (Tr. 189). On examination, she had only "slight limitation of lumbar spine motion," no spasm, and negative straight leg raising tests (Tr. 189). Dr. Daugherty provided another Depo-Medrol injection and refilled her pain medication (Tr. 189). Robinson did not follow up with Dr. Daugherty for six months. (Tr. 190). When she finally returned to him on September 11, 2008, she was reported to be "doing pretty well" and had

___

[8] Depo-Medrol is an anti-inflammatory glucocorticoid for intramuscular, intra-articular, soft tissue or intralesional injection. http://www.drugs.com/pro/depo-medrol.html.

[9] Naprosyn is another name for naproxen. *See* n.5, *supra*.

experienced just a 'little bit of flare-up of her lumbar spine associated with doing some traveling and working while at her daughter's home in Georgia" (Tr. 190). Her examination showed negative straight leg raising tests and no focal motor deficits. (Tr. 190). Dr. Daugherty gave her another Depo-Medrol injection and refilled her Naprosyn (Tr. 190).

Robinson did not return to Dr. Daugherty until March 17, 2009, when he reported that she was "doing fairly well" and had her "usual complaints regarding her back" (Tr. 192). Other than a "slight loss of motion of the lumbar spine in flexion extension and lateral bending, her examination was unchanged and Dr. Daugherty continued the Naprosyn and gave her a Depo-Medrol injection (Tr. 192). A DEXA bone scan test performed that same month showed normal bone mineral density of the left femoral neck and lumbar spine (Tr. 237). Laboratory testing done in April 2009, showed that her iron level was "borderline low," which could make her feel tired (Tr. 232). She was advised to take an iron supplement (Tr. 232). On May 14, 2009, Robinson told Dr. Rawlings that she was walking five nights a week for exercise (Tr. 226).

On July 16, 2009, Robinson told Dr. Daugherty that she could usually control her low back pain with anti-inflammatory medications and occasional Depo-Medrol injections (Tr. 193). Examination revealed only slight limitation of lumbar spine motion, as well as negative straight leg raising tests and no focal motor deficits (Tr. 193). Dr. Daugherty gave her a Depo-Medrol injection at this visit (Tr. 193).

When Robinson returned to Dr. Daugherty on September 24, 2009, she was again reported to be doing fairly well and was in her usual state of health, "with only now

complaining of return of her lumbar pain" (Tr. 205). She had only "slight limitations" of lumbar motion, but no other findings (Tr. 205). Laboratory testing on September 26, 2009, showed no evidence of early rheumatoid arthritis (Tr. 217).

On November 18, 2009, Robinson again told Dr. Rawlings that she was walking five nights a week for exercise (Tr. 225). A month later, on December 16, 2009, she presented to Dr. Rawlings complaining of depression (Tr. 224). Dr. Rawlings prescribed anti-depressant medication (Tr. 224). Treatment notes from Dr. Daugherty dated January 12, 2010, state that she was "doing fairly well" and that there were no new physical findings (Tr. 204) . Dr. Daugherty scheduled laboratory testing (Tr. 204). Two days later, on January 14, 2010, Robinson told Dr. Rawlings that her sleep was good and energy ok, and that she was trying to walk (Tr. 223). Dr. Rawlings stated that her affect was "ok" (Tr. 223). On March 10, 2010, she followed up with Dr. Rawlings asking for a prescription for a weight loss pill (Tr. 222). Dr. Rawlings reported that Robinson was "very polite" and "very agreeable" (Tr. 222).

When Robinson returned to Dr. Rawlings on June 10, 2010, she reported that her daughter had died in April of 2010 but that "I don't have time to feel depressed" (Tr. 221). Dr. Rawlings advised her to continue her medications (Tr. 221). Three months later, on September 9, 2010, Robinson told Dr. Rawlings that she occasionally had bad days and had been taking care of her mother (Tr. 220). Her blood pressure was better and she had a stable affect (Tr. 220). Dr. Rawlings noted that she was adjusting well to the loss of her daughter (Tr. 220).

4.    Vocational Expert's Testimony.

Barry Murphy testified as a vocational expert at plaintiff's administrative hearing (Tr. 49-51).  According to Mr. Murphy, Robinson's past relevant work as a "kitchen worker" or "specifically food prep" is classified as being "light [and] unskilled." (Tr. 49).  Her past relevant work as a housekeeper is also classified as being light and unskilled.  (Tr. 49).   The ALJ presented Mr. Murphy with a hypothetical individual of Plaintiff's age, education, and work experience, who could perform a range of light work with the following limitations:

- Lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently;

- No climbing ladders, ropes or scaffolds or working around unprotected heights and dangerous moving equipment;

- Occasional bending, stooping, kneeling, crouching, crawling and climbing stairs and ramps;

- Her field of vision is limited to the right, but she is able to read computer screens and newsprint as well as avoid workplace hazards; and

- No working in crowds or in jobs that would involve more than occasional contact with the public.

 (Tr. 49-50).  The vocational expert testified that such an individual could do Robinson's past relevant work.

In the ALJ's second hypothetical, a sit/stand option without leaving the work station was added to the above hypothetical (Tr. 50).  The vocational expert testified that such an individual is not able to do Robinson's past relevant work, but could do the light

unskilled jobs of mail clerk in a nonpostal capacity[10], office helper,[11] and packer[12] (Tr. 50).

In a third hypothetical, the ALJ added to the second hypothetical a need by the individual to leave the workstation to rest for "upwards of an hour" outside the usual breaks (Tr. 51). Mr. Murphy testified that there would be no jobs available for such a person because "[t]hat level of disruption to the workday is more than would be able to be accommodated by an employer." (Tr. 51).

5. The Administrative Law Judge's Decision.

The ALJ found that, through her September 30, 2008 date last insured,[13] Robinson's degenerative disc disease of the lumbar spine, glaucoma with left eye blindness, depression, obesity, and high blood pressure were severe impairments, but that she did not have an impairment or combination of impairments that met or medically equaled one of listed impairments (Tr. 17- 20). The ALJ further found that Robinson

---

[10] Mr. Murphy described this job of mail clerk (DOT code of 209.687-026) as light, unskilled with an SVP of 2 and indicated that there were 1,800 such jobs in the State and 350,000 in the national economy (Tr. 50).

[11] Mr. Murphy described this job of office helper (DOT code of 239.567-010) as light, unskilled with an SVP of 2 and indicated that there were 1,200 such jobs in the State and 160,000 in the national economy (Tr. 50).

[12] Mr. Murphy described this job of packer (DOT code of 920.686-038) as light, unskilled with an SVP of 2 and indicated that there were 1,200 such jobs in the State and 325,000 in the national economy (Tr. 51).

[13] The Social Security Act is clear in requiring that disability must be proven to exist during the time that the claimant is insured within the meaning of the special insured status requirements of the Act. Douglas v. Commissioner of Social Sec., 486 Fed.Appx. 72, 75 (11th Cir. 2012). If a claimant becomes disabled after her insured status has expired, her claim must be denied despite her disability. Id. See also Hughes v. Commissioner of Social Sec. Admin., 486 Fed.Appx. 11, 13 (11th Cir. 2012).

retained the ability to "perform a less than the full range of light work" (Tr. 20), consistent with the ALJ's hypothetical to the vocational expert and the expert's testimony, including the unskilled jobs of mail clerk, office helper, and packer (Tr. 20-25). Hence, the ALJ found that Plaintiff did not meet the strict standard for disability under the Act (Tr. 26).

The ALJ specifically found that, although Robinson experienced some problems when her right arm becomes tired, including opening items with her right arm, "she uses an 'easy open' medication bottle [and] her problems are limited to items that are 'real real tight' such as a jar of pickles" (Tr. 18). The ALJ further stated that Robinson "acknowledged that she has no problems eating, writing, opening a door, or caring for her personal hygiene" (Tr. 18). The ALJ also found that Robinson's medical records did not contain any "treatment for or diagnosis related to [her] upper extremities" (Tr. 18).

With respect to whether Robinson's impairments meet the listings, the ALJ found that:

- The claimant's degenerative disc disease of the lumbar spine is not characterized by nerve root compression, spinal arachnoiditis, or spinal stenosis, and therefore does not meet Medical Listing 1.04

- There is no evidence the claimant's glaucoma has resulted in a loss of visual acuity, loss of visual efficiency, or contraction of the visual field of the right eye that would meet the criteria of Medial Listings 2.02, 2.03, or 2.04.

- There is no indication that the claimant's obesity, alone or in combination with any other impairment, has given rise to a condition of listing level severity.

- The claimant's mental impairment did not meet or medically equal the criteria of listing 12.04.

(Tr. 18).  The ALJ further found that Robinson had no restrictions in her activities of daily living, which included vacuuming, cleaning the bathroom, cooking, doing laundry, taking care of her own hygiene and grooming, and using the bus independently.  (Tr. 19).  The ALJ referred to the "Function Report" completed by Robinson on August 24, 2009:

> Robinson reported that she spent her day cleaning her house, reading a book or the Bible, and walking.  She noted that she needed help caring for her hair but otherwise had no problems caring for her personal needs.  She indicated that she prepared her own meals, including complete meals.  She stated that she cleaned and washed laundry.  She went outside twice daily and used public transportation.  She was able to shop. . . . In her function report, the claimant noted that she attended church and talked on the phone daily.  She indicated that she did not have any problems getting along with others. . . . On August 24, 2009, she reported that she could pay attention "good."  She noted no problems following written instructions or spoken instructions.  She did not indicate that her conditions affected her ability to concentrate.  She indicated that she was able to pay bills, count change, handle a savings account, and uses a checkbook.

 (Tr. 19, *citing* Tr. 154-161).  The ALJ concluded that "the record shows that the claimant has no more than mild difficulties with concentration, persistence, or pace because of her mental impairments" (Tr. 19).

The ALJ's finding concerning Robinson's residual functional capacity to perform a less than full range of light work is predicated in part a finding that the inconsistency of physician's clinical examination results with Robinson's claimed inability to perform any sustained work activity (Tr. 21).  The ALJ found that the only "[a]bnormalities" noted by Robinson's treating orthopedist during his examinations between March 21, 2008 and January 12, 2010, "have been limited to 'slight' limitations in the range of motion of the claimant's spine."  (Tr. 21, *citing* Tr. 185-193 and Tr. 199-206).  The ALJ also found that

the "2$^+$ pedal edema" noted on March 26, 2009, was not replicated during any subsequent medical examination. (Tr. 21 citing Tr. 177-179). The ALJ also observed that, according to the medical records, the treatment of Robinson's back pain "has been essentially routine and/or conservative in nature and does not suggest the presence of an impairment which is more limiting than found in this decision" (Tr. 21).[14] Although Robinson testified that her Naproxen and depression medicine caused drowsiness, the ALJ found that the medical office treatment notes did not corroborate her allegations (Tr. 21).[15]

The ALJ also concluded that Robinson's credibility concerning her limitations was undermined by other inconsistent statements:

- On March 26, 2009 and May 14, 2009, [she] reported walking for exercise (Tr. 22 *citing* 178-179).

- On August 24, 2009, she reported walking 30 minutes daily [and] that she could lift 50 pounds (Tr. 22 *citing* Tr. 154, 159).

- On November 18, 2009, she reported walking more than once a week for exercise (Tr. 22 citing 212)

- On January 10, 2010, [she] reported "walking more" (Tr. 22 citing 209).

- At the hearing, [she] testified that she can walk no more than 15 minutes before needing to rest [and] that she can lift 10 pounds at the store but avoids lifting weights near 25 pounds [but that this is inconsistent with the

---

[14] The ALJ noted that Robinson takes Naproxen, which "has been relatively effective in controlling the claimant's symptoms" and "generally receives corticosteroid injections every 3-6 months . . . but did not seek treatment on or around her alleged onset date, which undermines her claims of continuous disabling symptoms" (Tr. 21).

[15] The ALJ also found that Robinson's claim that Naproxen caused her to be drowsy was inconsistent with the fact that she has taken this medication for 17 years since 1992, and it did not prevent her from working from that time to January 31, 2008, her alleged date of onset (Tr. 22). *See also* Tr. 35-38.

> medical records which] contains no corresponding evidence of deterioration in her condition (Tr. 22)

The ALJ also predicated her opinion regarding Robinson's residual functional capacity on the fact that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" (Tr. 22).[16]

B.    Analysis.

Robinson argues, in sum, that the ALJ erred because she has been depressed since 2007, suffers from arthritis in her back, legs and hands, walks with a cane and is on medicine that makes her drowsy. Robinson does not, however, specifically challenge any finding or conclusion by the ALJ regarding either the medical evidence proffered in this case or Robinson's testimony and other contentions in the record. This Court may not decide facts anew, reweigh evidence, or substitute its judgment for that of the Commissioner. Forrester v. Commissioner of Social Sec., 455 Fed.Appx. 899, 901 (11th Cir. 2012). "If the [Commissioner]'s decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Id., citing Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). In this case, there is neither a lack of evidence to support the ALJ's decision, nor is there any evidence in the record which preponderates against the ALJ's decision.

---

[16] The ALJ also specifically found that the office records of Phillip Rawlings, Jr. M.D., who is Robinson's primary care physician, "do not suggest the presence of impairments that are more limiting than [the ALJ's] decision" (Tr. 23).

The Commissioner asserts that, in order to establish her disability, Robinson was required to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. Doc. 25 at 8, *citing* 42 U.S.C. §§ 423(d)(1)(A)(2), (5) (defining disability within the meaning of the Act). This, the Commissioner argues, she failed to do because "there is an absence of objective medical evidence to support Plaintiff's claims of extreme functional limitations and disability prior to September 30, 2008," her last insured date. Doc. 25 at 8. Inasmuch as Robinson has failed to present or rely on any medical records, she is necessarily relying solely on her own assertions and subjective symptoms.

"[A] claimant's statements about pain or other symptoms will not alone establish disability." Webb v. Colvin, 2013 WL 4494991, *6 (M.D. Fla. August 20, 2013), *citing* 20 C.F.R. §§ 404.1529(a), 416.929(a). "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002)(*citing* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). *See also* Cooper v. Commissioner of Social Sec., 521 Fed.Appx. 803, 807 (11th Cir. 2013)("This standard also applies to complaints of subjective conditions other than pain."). Robinson has failed to make the necessary showing.

Robinson's claims in this case are not supported by the objective medical evidence of record. Between January 2008 and September 2008, there exists in the record only two treatment notes from Dr. Daugherty (Tr. 189, 190). *See* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing). *See also* Castel v. Commissioner of Social Sec., 355 Fed.Appx. 260, 265 (11th Cir. 2009) (finding that a claimant's failure to seek medical treatment is relevant in assessing credibility)(*citing* Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (per curiam).  At her March 2008 visit with Dr. Daugherty, Robinson said that she had experienced an exacerbation of pain, which she seemed to attribute to running out of her medication.  However, upon examination, Dr. Daugherty noted only slight lumbar spine limitation of motion, there were no muscle spasms, and straight leg raising tests were negative (Tr. 189).  At the September 2008 visit, Robinson said she had an exacerbation of pain "associated with doing some traveling and working while at her daughter's home in Georgia" although she was "doing pretty well" otherwise (Tr. 190).   The ALJ did not err in finding that these treatment notes do not reflect a seriously impaired individual, but instead reflect benign examination findings, effective treatment, and that Robinson was more active than she claimed. *See* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988)("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."); Alcott v. Commissioner of Social Sec., 2013 WL 646173, *7 (M.D. Fla. February 21, 2013)(same).  *See also* Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005)

(consideration of claimant's daily activities, symptom frequency, and medication types and dosages were sufficient reasons for finding claimant not credible).

Although Robinson was required to prove that she became disabled prior to her date last insured of September 30, 2008, in order to receive benefits, evidence dated outside the relevant time period also supported the ALJ's decision that Robinson was not disabled. For example, Dr. Daugherty's treatment notes consistently showed that Robinson had good or only slight limitation of motion, negative straight leg raising tests, and no focal motor deficits or weakness (Tr. 188, 189, 190, 192, 193, 204, 205). Dr. Rawlings' treatment notes similarly showed little support for Robinson's claims of total disability. When Robinson presented to him in May and November 2009 for medication refills, she reported that she was walking five nights a week for exercise (Tr. 225, 226). In January 2010, she told Dr. Rawlings that she was her sleep was good, her energy was ok, and she was trying to walk (Tr. 223). In September 2010, she was reportedly taking care of her mother (Tr. 220). *See* 20 C.F.R. § 404.1529(c) (the ALJ should consider objective evidence, or lack thereof, when determining an individual's credibility); Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987)(ALJ's decision supported by lack of objective medical evidence); Rivers v. Astrue, 901 F.Supp.2d 1317, 1331(S.D. Ala. 2012)("ALJ's credibility finding is supported by substantial evidence and . . . the ALJ's reasons for discrediting Plaintiff's testimony were clearly articulated in the decision.). Moreover, Robinson has received only conservative treatment (medications and injections), which does not supports her claims of disability. *See also* Daniels v. Astrue, 2012 WL 1564415, *7 (M.D. Ala., April 30, 2012)("Although the claimant has been

treated for these conditions, the medical records do not document any ***long-term*** or ***sustained*** treatment for these conditions nor any restrictions upon the claimant's functioning as a result of these conditions.")(emphasis in original); Giles o/b/o Dowdell v. Barnhart, 182 F. Supp. 2d 1195, 1200 (M.D. Ala. 2002)(same); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (allegations of disabling pain may be discounted because of inconsistencies such as conservative treatment).

The evidence in this record also substantially supports the ALJ's findings with respect to Robinson's RFC. The ALJ's RFC was "an administrative assessment of the extent to which [Robinson's] medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect [] her ability to do work related physical or mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184. The RFC is the most a person can do, despite her impairments. *See id*. Here, the ALJ found that, during the relevant time period, Robinson retained the residual functional capacity to perform a range of light work with her vision limited to her right eye; no climbing ladders, ropes, or scaffolds or working around unprotected heights or dangerous moving equipment; occasional bending, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no working around crowds; occasional contact with the public; and the option to alternate between sitting and standing as necessary (Tr. 20). Both the medical evidence and Robinson's reported daily activities support this RFC.

In her August 2009 function report, Robinson stated that her daily activities included cleaning her house, reading, and walking 30 minutes (Tr. 154). She stated that

she prepared meals, did laundry, and shopped (Tr. 156-57). She also reported that she read, walked, and watched television daily and that she did these things "good" (Tr. 158). She said she could lift up to 50 pounds and indicated she could walk 30 minutes at a time (Tr. 159). In September 2008, Robinson traveled and worked at her daughter's home (Tr. 190). In June 2010, she reported taking care of her mother (Tr. 220). *See* Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (The ALJ may consider such daily activities when evaluating subjective complaints of disabling pain and other symptoms); Symonds v. Astrue, 2011 WL 5138598 at *2 (M.D. Fla., October 31, 2011) (Plaintiff's testimony that his daily activities included vacuuming, caring for his children and helping his wife with the grocery shopping contradicted his testimony about the limiting effects of his symptoms).

In addition, not one of Robinson's doctors ever opined that she had significant functional limitations as a result of her impairments, or that she was disabled. *See* Cartwright v. Heckler, 735 F.2d 1289, 1290 (11th Cir. 1984)(fact that no physician said Plaintiff was disabled supports ALJ's decision). Despite the lack of evidence of any restriction, the ALJ provided Robinson the benefit of the doubt and concluded she was limited to a range of light work—the second most restrictive exertional level—with additional postural limitations and a sit/stand option.

Robinson's plea to this Court is, in sum, for the court to reweigh the evidence, which it cannot do. *See* Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(a court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment" for the Commissioner's). The ALJ has articulated legitimate reasons to discredit

Robinson's claims of disabling symptoms and reasonably concluded she retained the residual functional capacity to perform a range of light work existing in significant numbers. Consequently, no legal grounds exist for this Court to disturb the ALJ's findings. *See* Strickland v. Commissioner of Social Sec., 516 Fed.Appx. 829, 832 (11th Cir. 2013)("We will not disturb a properly articulated credibility finding that is supported by substantial evidence."); Stanley v. Astrue, 386 Fed.Appx. 918, 919 (11th Cir. 2010)("Substantial evidence supports the decision to discount [physician's] opinion that in December 1997 [claimant] was "totally and permanently disabled for all work" [because the] opinion is inconsistent with his medical notes about [claimant's] condition, the opinions of other doctors who examined [claimant], and [claimant's] testimony.") (*citing* Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991); *see also* Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989)(finding ALJ's three reasons for rejecting pain complaints sufficient).

## CONCLUSION

Robinson bears the burden of demonstrating that the Commissioner's decision is not supported by substantial evidence. *See* Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Because she has failed to meet this burden, it is the opinion of the undersigned that the ALJ properly determined that she was not disabled (Tr. 25-26) and it is recommended that the decision must be **AFFIRMED**.

## <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it

must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this  1st  day of November, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**